IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSHUA JOHNSON,

    Plaintiff,

v.                                                  No. 2:23-cv-1063 SMD-KRS

PARKS FLOYD INVESTMENTS, LLC,
d/b/a VILLAGE LODGE,

    Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS**

THIS MATTER is before the Court on Defendant's Motion For Sanctions ("Sanctions Motion") (Doc. 21). After considering the motion, Plaintiff's response (Doc. 26), and Defendant's reply (Doc. 29), the Court now denies Defendant's request for sanctions for the reasons set forth below.

**Background**

Plaintiff, an employee (or former employee) of Defendant, brought this action to recover overtime compensation and other lost wages allegedly owed by Defendant pursuant to the Fair Labor Standards Act ("FLSA"). (Doc. 1). A scheduling order was entered on February 21, 2024, requiring discovery to be concluded by November 18, 2024. *See* (Doc. 11). But the parties filed a joint motion to extend that deadline because "Defendant has not had sufficient opportunity to conduct discovery owing to its counsel's recent (but extended) ill health." (Doc. 15 at 1). The Court granted the motion and extended the discovery deadline to March 18, 2025. (Doc. 16). On March 20, 2025, Defendant filed an opposed motion to vacate the scheduling order, requesting an additional four-month extension of the discovery period. (Doc. 19). The reason for the requested extension was that Plaintiff's deposition, which Defendant had scheduled to occur on the final day

of the extended discovery period, had been prematurely terminated when an outstanding arrest warrant against Plaintiff was executed by police officers who unexpectedly appeared at Plaintiff's location while the deposition was on-going. Defendant argued in its opposed motion to vacate among other things that "[s]ome of Plaintiff's responses to written discovery were dishonest (including regarding current and past criminal charges) and/or incomplete and Defendant had hoped to obtain the requested (and truthful) information via the deposition of Plaintiff." (Doc. 19 at 2). Plaintiff opposed the motion to vacate, arguing that it was filed after the discovery deadline had expired and therefore was untimely, and that Defendant waited until the last minute to schedule Plaintiff's deposition, lacked diligence in timely conducting discovery, and was responsible for Plaintiff's deposition ending prematurely in that Defendant's corporate representative, present at the deposition, alerted the police to Plaintiff's location while the deposition was taking place. (Doc. 20).

The Court held a hearing on the opposed motion to vacate on April 22, 2025, at which time the Court heard arguments and then ruled that Defendant's motion to vacate was untimely but found excusable neglect for Defendant failing to move for an extension before the discovery deadline expired. *See* (Doc. 28). The Court also found that both Plaintiff and Defendant bore some responsibility for the delay in conducting Plaintiff's deposition, and therefore found good cause to extend the discovery deadline, but solely for the purpose of Defendant taking Plaintiff's deposition. (*Id.*). The Court set forth its ruling in a written Order entered on April 24, 2025, in which the Court found as follows:

> On March 4, 2025, Defendant noticed Plaintiff's Zoom based deposition duces tecum for March 18, 2025. The notice of deposition duces tecum provided a list of documents for Plaintiff to produce at the deposition in fourteen days, despite the thirty days allotted for parties to produce documents upon request pursuant to Rule 34 of the Federal Rules of Civil Procedure ("FRCP"). On

2

> March 18, 2025, approximately 90 minutes into Plaintiff's deposition, and after having been questioned by Defense counsel about his then-present location, Ruidoso, New Mexico, police officers appeared at Plaintiff's location and arrested him on an outstanding arrest warrant. Plaintiff's arrest resulted in the deposition being terminated before Defense counsel had completed his examination of Plaintiff. During the April 22, 2025 hearing, defense counsel conceded that a representative of Defendant had notified the Ruidoso Police Department of Plaintiff's location. Thus, while Plaintiff bears the sole responsibility between the parties as to the existence of an active warrant for his arrest, Plaintiff probably would not have been arrested during his deposition had the representative of Defendant not notified police of his location.

(Doc. 30 at 3).

Many of the same arguments Defendant raised in its opposed motion to vacate are also raised in the present Sanctions Motion, which was filed prior to the Court holding a hearing on Defendant's opposed motion to vacate and the Court's findings at that hearing, but was not fully briefed until the same day as the Court entered its written Order on the motion to vacate. The Court will refer to its previous Order on the motion to vacate where Defendant's arguments on the present Sanctions Motion duplicate ones already rejected by the Court in that previous Order.

Turning to the present Sanction Motion, Defendants states that it seeks "sanctions against Plaintiff to address his failure to answer written discovery, his sudden cancellation of two key depositions, and his failure to make himself available for his deposition." (Doc. 21 at 1). For these alleged transgressions, Defendant asks that the Court (1) "award Defendant its reasonable costs and attorney fees associated with this motion for sanctions regarding written discovery and with the two suddenly cancelled depositions of February 11, 2025 and the suddenly suspended deposition of Plaintiff on March 18, 2025"; and (2) "vacate the November 2024 scheduling order and enter a new scheduling order to permit Defendant (but not Plaintiff) additional time (four months) to complete discovery, if the court has not already done so pursuant to Defendant's March 20, 2025 motion to extend the discovery deadline." (Doc. 21 at 15). In its reply brief, Defendant

3

amends its request for relief slightly, asking for an award of reasonable costs and attorney fees associated with drafting and filing the Sanctions Motion and "Plaintiff's two improperly arranged and cancelled depositions of February 11, 2025," as well as fees associated in some unspecified manner with Plaintiff's inadequate written discovery responses and "a large but comparative portion of Defendant's damages resulting from the suddenly suspended deposition of Plaintiff on March 18, 2025." (Doc. 29 at 7). Defendant's reply brief also reiterates the request for a new scheduling order, adding that the new deadlines should "permit Defendant (but not Plaintiff) additional time to analyze and evaluate discovery after the [rescheduled] deposition of Plaintiff [which the Court ordered to occur] in July 2025, and to file amended motions for sanctions and/or motions for summary judgment if such amendments are subsequently determined to be appropriate by Defendant, if the court has not already entered summary judgment for Defendant, pursuant to Defendant's First Motion for Summary Judgment [Doc. 24]."[1]

## Discussion

### A.   Defendant's Request For A Four-Month Extension Of Discovery

The Court starts with Defendant's request for an additional four months to complete discovery. To begin with, Defendant cites no authority for granting a one-sided extension of the discovery deadline as a "sanction" against Plaintiff. In reality, Defendant is using the Sanctions Motion as a guise for a motion to extend scheduling order deadlines, which is improper. *See, e.g., Peterson v. Nelnet Diversified Sols., LLC,* No. 17-CV-01064-NYW, 2019 WL 4643681, at *3 (D. Colo. Mar. 12, 2019) (where parties made arguments that implicated an amendment to the operative pleading, court holds that the "instant Motion for Reconsideration is not an appropriate

---

[1] Defendant filed a timely motion for summary judgment on April 17, 2025 (Doc. 24), which is currently pending before the presiding judge.

vehicle for such relief"; rather the plaintiff would be required to so move and to satisfy the standard applicable to a motion to amend at that stage of the proceedings); *see also* D.N.M. LR-Civ.10.2 (**Titles of Documents.** The title of a document must clearly identify its substance and any filed document to which it responds or is connected.").

More importantly, the Court already has ruled that Defendant has not shown good cause for an extension of the discovery deadline for any purpose other than to allow Defendant another chance to depose Plaintiff. *See* (Doc. 30 at 4 ("[W]hile the unexpected early termination of Plaintiff's deposition provides good cause for the extension of the discovery deadline to complete Plaintiff's deposition, it does not provide good cause for extension of the discovery deadline for any other purpose.")). Defendant has not presented any compelling reason why the Court should reconsider its previous ruling on the issue. For instance, any discovery other than Plaintiff's deposition was already foreclosed by the time of the interrupted deposition, because the discovery deadline was due to expire that day. Therefore, the fact that the deposition got interrupted does not provide good cause for extending the discovery deadline to allow further discovery beyond Plaintiff's deposition. To the extent that Defendant argues it wanted to obtain information from Plaintiff during his deposition concerning his responses to Defendant's written discovery requests, Defendant presumably was able to do that at the second deposition, which the Court assumes took place as ordered in July 2025. Defendant argues that it may need to file an amended or additional motion for summary judgment with information that it obtained during Plaintiff's second deposition in July, after the motion deadline had expired. Defendant does not need an extension of the motion deadline for that purpose, however. Defendant's motion for summary judgment is still pending, and therefore Defendant can simply file a motion asking the presiding judge to allow it to supplement its timely filed summary judgment motion with any additional supportive facts first

learned at Plaintiff's second deposition, citing the late date of Plaintiff's second deposition in July 2025 as the reason for the need to supplement after the motions deadline.

### B. Defendant's Request For Sanctions Based On Plaintiff's Alleged "Failure To Make Himself Available For His Deposition"

Defendant's reference to Plaintiff's alleged "failure to make himself available for his deposition" is to Plaintiff's March 18, 2025 deposition, which was cut short when the Ruidoso Police Department showed up to arrest Plaintiff. *See* (Doc. 21 at 2-3 (¶¶ 6-10)). Defendant cites Rule 30(d) in support of its request for sanctions based on what happened at the deposition in March. *See* FED. R. CIV. P. 30(d)(2) ("The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."). According to Defendant, Plaintiff impeded, delayed, or frustrated his own deposition by having an outstanding arrest warrant, which led to his arrest during the deposition.

As the excerpt from the Court's April 24, 2025 Order quoted earlier in this Order indicates, the Court found that "Plaintiff probably would not have been arrested during his deposition had the representative of Defendant not notified police of his location," and therefore that the deposition "was cut short on March 18, 2025 *through the fault of both parties*." (Doc. 30 at 4 (emphasis added)). The Court declines to sanction Plaintiff for the events that took place that date, since the Court has found that Defendant bears some responsibility for the March 18, 2025 deposition not proceeding as planned.

Defendant acknowledges the Court's ruling to this effect in his reply brief, but asserts that "Plaintiff was more than 90% responsible for the deposition disruption," and therefore "he should be ordered to pay 90% of Defendant's related attorney fees and costs." (Doc. 29 at 6). The Court did not apportion fault in its previous Order and declines to do so now, as Defendant has provided

6

no basis whatsoever for its asserted apportionment of 90% of the fault to Plaintiff. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty … to make arguments for a litigant that he has not made for himself."). To the extent that Defendant offers any justification for the 90% fault allocation to Plaintiff, the Court finds Defendant's argument is unreasonable and factually unsupported. Defendant contends that Plaintiff's counsel should have taken "the required action to ensure that Plaintiff would not be subject to warrants for his arrest during his deposition" (Doc. 21 at 4 (¶ 16)), but fails to specify the action it believes Plaintiff's counsel should have taken. Defendant also appears to fault Plaintiff for having an outstanding arrest warrant, criticizing Plaintiff's counsel for saying he "was 'not bothered' by Plaintiff's alleged criminal history," and noting that "Plaintiff has pending criminal cases in NM state courts for illegal conduct" and that "the time frame or prospects of his conviction and incarceration in any of the pending [criminal] cases are unknown." (*Id.* ¶¶ 7, 9, 16). Plaintiff's criminal record, however, does not appear to be relevant to the discovery issues raised by the Sanctions Motion, except to the extent that Plaintiff's arrest interrupted his deposition. And, as the Court found, the interruption happened as a result of actions taken by *Defendant's* corporate representative, who, while the deposition was in progress, notified the police of Plaintiff's whereabouts. Defendant's corporate representative must have known that the deposition would be disrupted by the police acting on the information she provided. Defendant presents no argument—and the Court does not find any basis—for sanctioning Plaintiff or his counsel for the facts that Plaintiff may have a criminal history or that Plaintiff had an outstanding arrest warrant at the time of his deposition and failed to anticipate that Defendant would notify the police of his location while the deposition was in progress.[2]

---

[2] Defendant also complains about a number of other matters related to the interrupted deposition, such as the fact that, "instead of apologizing for the disruption of the deposition, Plaintiff's counsel … , on the record, accused defense

### C.     Defendant's Request For Sanctions Based On Plaintiff's Allegedly "Sudden Cancellation of Two Key Depositions"

Defendant also seeks sanctions for Plaintiff's cancellation of two depositions less than two hours before they were scheduled to begin. The depositions in question were of a single individual, Asia Miner, who was being deposed twice on the day in question in her capacity as Defendant's Rule 30(b)(6) witness and also in her capacity as Defendant's manager. (Doc. 21 at 1). In support of sanctions, Defendant cites Rule 30(g)(1), which provides that "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for

---

counsel of 'smirking' because Plaintiff had been arrested." (Doc. 21 at 2 (¶ 8)). Defendant asserts that "[t]his accusation was inaccurate, unprofessional, and dangerous." (*Id.*). Aside from the hyperbolic assertion that it was "dangerous" to accuse defense counsel of "smirking," this complaint borders on the petty, and at the very least is not a basis for sanctions. Defendant also complains that it "has the right to depose Plaintiff, but Plaintiff himself impeded Defendant's right by his alleged criminal conduct, sudden arrest and police detention." (Doc. 21 at 3 (¶ 10)). This complaint is no longer justified as the Court granted Defendant's motion to extend the discovery deadline for purposes of re-scheduling Plaintiff's deposition. The Court assumes that the re-scheduled deposition took place, since neither party has filed any motion indicating otherwise and the extended deadline for taking the deposition has now expired. Accordingly, any harm Defendant allegedly might have suffered as a result of the interrupted March 18, 2025 deposition has been avoided. Finally, Defendant complains that Plaintiff's counsel's refusal to agree to an extension of the discovery period to allow Defendant additional time to re-schedule Plaintiff's deposition was "unreasonable," further demonstrating that Plaintiff's conduct during discovery has been "unacceptable" such that sanctions are warranted. (Doc. 21 at 3 (¶ 15)); *see also* (*id.* (¶¶ 13-14)). The Court can understand why Defendant's counsel might view Plaintiff's counsel's position on an extension of the discovery deadline as displaying a lack of professional courtesy. But the Court can also understand if Plaintiff's counsel responded in that manner because, at the time, he was upset (understandably) that Defendant's corporate representative had used Plaintiff's deposition as an opportunity to notify the police of Plaintiff's whereabouts. Also, Plaintiff's counsel was already disturbed by the fact that, at least according to Plaintiff, "Defendant's counsel unilaterally scheduled and noticed Plaintiff's deposition" (Doc. 26 at 2 (¶ 17)), which, if true, would have violated D.N.M. LR-CIV. 30.1 ("Counsel must confer in good faith regarding scheduling of depositions before serving notice of deposition."). Plaintiff also felt justified in refusing Defendant's request that he agree to an extension by the fact that, after obtaining a four-month extension of the discovery deadline in November 2024 due to Defendant's counsel's ill health, Defendant waited until the last day of the extended discovery deadline to schedule Plaintiff's deposition. In light of the totality of circumstances, the Court does not find Plaintiff's position on a discovery extension so unreasonable as to warrant sanctions. Defendant asserts, without any legal support, that "[w]hile it may be unwise to schedule a deposition on the last day of discovery it is not improper … and should not be the basis for a denial of sanctions." (Doc. 29 at 6). Defendant erroneously argues from a position of entitlement to sanctions, positing that the circumstances in question should not be the basis for denying that right. In actuality, Defendant must show why the Court should exercise its discretion in Defendant's favor to award sanctions. And Defendant's own neglect in waiting until the last minute to schedule Plaintiff's deposition certainly does weigh against such a determination. Defendant also was neglectful in failing to file its motion for an extension of the discovery deadline before that deadline expired, despite knowing on the day of the deposition that Plaintiff's counsel would not agree to the extension. *See* (Doc. 21 at 3 (¶ 13) (admitting that defense counsel was aware that Plaintiff would oppose the extension on March 18, 2025, when Plaintiff's counsel stated as much on the record at the time of Plaintiff's arrest)). While the Court found defense counsel's neglect in failing to move for an extension on the same day as the interrupted deposition to be excusable, the Court does not think Plaintiff's asserted lack of professional courtesy around the extension request constitutes grounds for sanctions.

attending, including attorney's fees, if the noticing party failed to … attend and proceed with the deposition[.]" FED. R. CIV. P. 30(g)(1).

Plaintiff responds that "Defendant's Motion misrepresents the circumstances around the cancellation of the depositions." (Doc. 26 ¶ 4). According to Plaintiff, defense counsel was notified on the morning before the scheduled depositions that Plaintiff's counsel had just learned from "the court reporter's office that there was a scheduling conflict and there would not be a New Mexico court reporter available." (*Id.* ¶ 9). Plaintiff's counsel requested defense counsel to stipulate to use of an out-of-state court reporter, but defense counsel failed to respond to that request either when made the day before the scheduled depositions or when asked a second time the morning of the depositions. (*Id.* ¶¶ 10, 13). Given defense counsel's silence in the face of Plaintiff's requests for a stipulation to an out-of-state court reporter, Plaintiff states he had no choice but to cancel the depositions. (*Id.* ¶ 14).

Defendant agrees that Plaintiff emailed defense counsel the day before the depositions asking for a stipulation to allow a court reporter from Florida to cover the depositions, and that Defendant's emailed response was to ask "[i]s the court reporter licensed in New Mexico?" (Doc. 29 at 4). According to Defendant, its counsel "was not expressly informed of the court reporter's licensing issue until less than an hour before the scheduled start of the two depositions," and Plaintiff's counsel's "intentionally failed to disclose this important information" in his email the previous day. (*Id.* at 5).

Clearly, there has been a breakdown in communication between counsel if neither one was willing to pick up the phone to call the other to ask for an explanation of what was not made clear in the emails sent by opposing counsel. Regardless, the Court cannot infer from the miscommunications between counsel as shown by the portions of the emails set forth in

9

Defendant's reply brief[3] that Plaintiff's counsel engaged in intentional misconduct. Nor can the Court conceive of a motive that Plaintiff's counsel could possibly have to intentionally mislead Defendant's counsel on the matter at issue. Giving Defendant the benefit of the doubt, the Court might be able to conclude from an actual review of the emails if that were possible (but see footnote 3) that, contrary to Plaintiff's version set forth in his response brief, Plaintiff's counsel did not clearly state the reasons for his request that Defendant stipulate to an out-of-state court reporter. Such a situation, however, does not provide a basis for sanctions.[4] And even if it did, Defendant has not shown that it incurred any expenses or attorney's fees from its corporate representative or counsel attending the depositions *in person*. *See* FED. R. CIV. P. 30(g)(1). Defendant does not state whether the deposition was to take place in person, or, if it was, whether either its corporate representative or counsel was at the location of the deposition already when counsel received notice of the cancellation, which Defendant concedes its counsel received at around 7:22 a.m. The Court is not going to assume Defendant incurred such expenses when the 7:22 a.m. notification time seems sufficiently in advance of what one would expect the scheduled start time to have been[5]

---

[3] Defendant's reply brief cites to "Ex. 1" for the emails in question, but there are no exhibits attached to the reply. Rather than provide the Court with the disputed emails between counsel, Defendant sets forth what those emails say in purported excerpts taken from those emails, which excerpts could be the entirety of the emails in question but could also be only portions thereof. Defendant then asserts that "a careful review of [the emails] indicates that Plaintiff's counsel is lying in th[e] email [sent the morning of the depositions in which he supposedly states that "the court reporter's office … informed us last night that they weren't able to" provide a New Mexico court reporter ] and that he knew about the alleged unavailability of a licensed New Mexico court reporter at least by 2 p.m. MST on February 10, 2025[.]" (Doc. 29 at 5). Obviously, the Court cannot conduct a "careful review" of the emails when they have not been provided to the Court by either party.

[4] Defendant's reply brief argues that "undersigned counsel should not be blamed for the sudden cancellation of the two scheduled depositions just because he would have refused to facilitate the use of an unlicensed court reporter (a violation of the laws of this state)." (Doc. 29 at 6 (¶ 9)). But Defendant is framing the issue incorrectly. The question is not who is more to blame for the deposition not going forward that day, but whether the requirements for an award of fees under Rule 36(g)(1) have been met. And the Court finds that they have not been.

[5] Defendant asserts that its counsel learned of the cancellation "less than an hour before the scheduled start" time (Doc. 29 at 5), but does not say what the scheduled start time was. Defendant represents that the email cancelling the depositions was sent at 7:22 a.m. MST, so presumably the start time was less than an hour after that time, which seems earlier than when depositions typically begin. In any case, the Motion does not state whether defense counsel or his client were planning to attend the deposition in person, and the Court is not going to assume facts that have not been

10

to have allowed Defendant to avoid the expense of showing up for the depositions in person (if that indeed had been what Defendant planned to do).

Defendant asserts that "Plaintiff's last-minute cancellation of the two deposition[s] was disruptive of the discovery process, caused Defendant's witness undue emotional distress (and required the witness to prepare twice for the depositions) and cost Defendant thousands of U.S. dollars in additional attorney fees." (Doc. 21 at 1-2 (¶ 3)); *see also* (Doc. 29 at 5 (¶ 7) ("This documented deception of Plaintiff's counsel caused undersigned counsel to spend more than five hours (and much stressful effort) preparing Defendant's corporate representative for two key depositions the next morning later that afternoon and evening. Undersigned counsel would have to repeat some of this very same preparation in the days immediately preceding the rescheduled depositions, at additional expense to Defendant.")). But the discovery process was hardly "disrupted," as Defendant asserts. Plaintiff contends, and Defendant does not dispute, that the depositions were promptly rescheduled and took place on March 6, 2025. Furthermore, Rule 30(g), which is the only legal authority for sanctions cited by Defendant, does not authorize recovery for the types of expenses cited by Defendant. The Court need not consider whether sanctions are warranted under any other rule or provision, or under the Court's inherent authority, as Defendant has not made any argument to that effect, citing only Rule 36(g)(1). *See Seifert v. Unified Gov't of Wyandotte Cty./Kan. City*, 779 F.3d 1141, 1156 (10th Cir. 2015) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (citation omitted))). And even if the Court were to address a legal issue not raised in the Sanctions Motion--and even if the Court were to accept Defendant's version

---

presented to it in order to conclude that Rule 30(g)(1) authorizes an award of attorney's fees. *See, e.g., Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 880 & n. 9 (10th Cir. 1997) (holding that party who noted issue and made "several broad, conclusory statements" on appeal waived argument for failure to develop it).

11

of the events in its entirety--it would be impossible for the Court to say that Plaintiff cancelled the depositions in bad faith or engaged in any other conduct that would justify the imposition of sanctions.

### D. Defendant's Request for "Sanctions" Based On Plaintiff's Alleged "Failure To Answer Written Discovery"

The final reason Defendant gives for why Plaintiff should be sanctioned is that his "responses to written discovery were dishonest (including regarding current and past criminal charges) and/or incomplete." (Doc. 21 ¶ 11)); *see also* (*id.* at 4 ("Plaintiff committed perjury in his verified responses to written discovery when he intentionally provided false or misleading information.")). Specifically, Defendant argues Plaintiff's responses to Interrogatories 3, 6, 7, 10, 12, 14, 15, and 16 are either nonresponsive or false. Defendant also argues that Plaintiff failed to produce any documents in response to Defendant's Document Production Requests Nos. 1, 2, 4 5, 6, 7, 8, and 10, even though Plaintiff's written responses state either that it was "unknown" at that time whether Plaintiff had any responsive documents, or that all responsive documents would be produced. Defendant asks the Court to order the production of responsive documents and payment of Defendant's costs and attorney fees, and/or "prevent[ ] Plaintiff from introducing or relying on any documents" he should have produced in response to the requests in question.

The Court declines to address the issue of Plaintiff's allegedly defective discovery responses because it has not been properly presented to the Court. The "Legal Analysis" section of Defendant's brief consists of two short paragraphs dealing with the deposition issues previously discussed in this Order. There is no discussion of any kind regarding the legal principles applicable to Plaintiff's allegedly deficient discovery responses, so the Court deems the issue to have been waived. *See* D.N.M. LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced."); *see also Thompson v. State Farm Mut. Auto. Ins. Co.,* 789

F. App'x 90, 93 n.4 (10th Cir. 2019) ("State Farm states in one perfunctory sentence that Plaintiff's expert relied on inadmissible hearsay. State Farm, however, provides no substantive explanation and cites no legal authority supporting its position. We therefore deem that argument waived.").

Nor can the Court overlook Defendant's waiver when there are so many other procedural hurdles the Court would have to overcome before it could reach the merits of Defendant's arguments. For instance, Defendant argues that Plaintiff's interrogatory responses are evasive or even outright dishonest based on factual assertions unsupported by any evidence. The Court cannot find Plaintiff's responses are false based on Defendant's mere assertions to that effect. *See, e.g., In re Lang,* 293 B.R. 501, 513 (B.A.P. 10th Cir. 2003) (statements by counsel in briefs filed in court are not evidence). "Parties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact," D.N.M LR-CIV. 7.3(b), which Defendant has not done.

Defendant also does not explain what relief it seeks related to the allegedly false interrogatory responses. If the relief is an extension of the discovery deadline so Defendant can obtain evidence to prove the interrogatory responses are false, that issue has already been addressed. As the Court previously held, a motion for sanctions is not the proper vehicle for requesting an extension of scheduling order deadlines. And even if it was, Defendant has not shown good cause for an extension because it does not dispute it has been in possession of Plaintiff's written responses to the interrogatories since January 8, 2025, yet waited until March 20, 2025—after the discovery deadline expired—to seek an extension.[6]

---

[6] Defendant repeatedly asserts that it had hoped to ask Plaintiff about his discovery responses at his deposition in March, but those efforts were thwarted by Plaintiff's arrest. Defendant is at fault for having waited until the deposition to seek to resolve issues surrounding Plaintiff's written discovery responses, when Defendant knew that the deposition was scheduled for the last day of the discovery period. It was unrealistic to think that all disputes over the written discovery responses would have been resolved during the deposition. Defendant should have either sought to resolve them before then or else sought an extension of discovery deadline before it expired.

Insofar as Plaintiff's alleged failure to produce documents is concerned, Defendant's request for an order precluding Plaintiff from introducing or relying on documents not produced in discovery is premature, and can be addressed if and when Plaintiff attempts to rely on a document that it agreed to produce but did not. Until then, it has not been shown that Plaintiff committed any discovery violation for which the sanction of preclusion might be appropriate.

Defendant also requests an order compelling Plaintiff to produce documents that Defendant believes exist but were not produced. However, a motion for sanctions is not the appropriate vehicle for an order compelling the production of documents. A request for a court order directing Plaintiff to produce documents should be made through the filing of a motion to compel. *See* FED. R. CIV. P. 37(a)(3)(B) (discussing motions for an order compelling, among others, an answer to an interrogatory or the production of documents). Furthermore, the Court declines to construe the Sanctions Motion as a motion to compel based on the requested relief in the body of the motion of an order to produce. To do so would violate the Local Rules, which require that "[t]he title of a document must clearly identify its substance and any filed document to which it responds or is connected." D.N.M. LR-CIV. 10.2.

But even if the Court were to construe the Sanctions Motion as a motion to compel, Defendant failed to comply with D.N.M. LR-CIV. 37.1, which requires that "[a] party seeking relief pursuant to FED. R. CIV. P. 26(c) or 37(a) must attach to the motion a copy of [the discovery requests at issue and the opposing party's responses thereto]." Defendant purports to quote the requests at issue and Plaintiff's responses in the Sanctions Motion, but the Local Rule requires that Defendant submit the actual discovery requests and responses as exhibits so the Court can inspect them for itself.

In addition, the Court questions whether Defendant has fully complied with the Rule 37(a)(1) requirement of "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Defendant represents that, "[f]or more than two weeks, Defense counsel requested conferences with Plaintiff's counsel to discuss discovery in a good faith but unsuccessful attempt to obtain the missing discovery information without court action." (Doc. 21 ¶ 18). But "[s]tatements by counsel in briefs are not evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Defendant's counsel has not submitted a declaration explaining in any detail what those efforts consisted of, nor has Defendant attached any exhibits to the Motion, such as emails, showing the attempts to confer in good faith. Defendant has also failed to "certify" that the required conferral took place. *See, e.g., Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS-CHL, 2016 WL 2731497, at *4 (W.D. Ky. May 6, 2016) (finding that Rule 37(a)(1) was satisfied where the defendant "provided the Court with a detailed description of its good-faith efforts to confer, copies of the written communications showing such efforts, and a formal certification").

The requirements of Rule 37(a) "implement the Civil Rules' recurring preference for litigants to use cost-saving, extrajudicial efforts to resolve discovery disputes before seeking judicial intervention. And more to the point, they expect professionals to manage discovery, well, professionally, rather than requesting a court to expend its energies when the parties have not sufficiently expended their own." *Curtis v. Deutsche Bank*, No. 1:23-CV-12859, 2025 WL 1296206, at *12 (E.D. Mich. May 5, 2025) (internal quotation marks and citations omitted). To be sure, Plaintiff appears to admit that he was non-responsive to Defendant's attempt to confer because he believed the issue of deficient discovery responses had been waived by Defendant's

15

failure to object within twenty-one days of receiving those response, *see* D.N.M. LR-Civ. 26.6. The Court does not feel the need to delve into the parties' dispute in the briefing over whether the twenty-one day deadline in Local Rule 26.6 applies to the current motion. Doing so is unnecessary when there are so many other procedural defects with Defendant's motion. What is important is that Plaintiff's refusal to engage in discussions about the allegedly deficient discovery responses might have been overcome had Defendant made more than a trifling attempt to confer in good faith by explaining in detail the legal bases for his position that it was not too late to raise the issues it wanted to discuss with Plaintiff. Courts have held that the good faith conferral requirement of Rule 37(a) involves "a more sincere effort to see if the dispute can be resolved before a party files a motion to compel" than merely "exchanging cursory and perfunctory emails or letters which simply restate each other's positions on the items of discovery." *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 723–24 (D.N.M. 2017); *see also Mayer Botz Enterprises LLC v. Cent. Mut. Ins. Co.*, No. 1:21-CV-00992-MIS-LF, 2023 WL 112270, at *1 (D.N.M. Jan. 5, 2023) ("The duty to confer in good faith requires more than just sending a letter. Before filing a motion, counsel are required to 'converse, confer, compare views, consult and deliberate.'" (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (internal quotation and citation omitted))). The Court suspects that did not happen here.

      Defendant's failure to cite legal authority in support of the relief it requests in the motion is likely the reason for all of the procedural irregularities touched upon above. Had Defendant considered the question of what legal authority authorized sanctions or any of the other requested forms of relief, it should have recognized that Rule 37(a) governs motions to compel and Rule 37(b) governs sanctions for failure to comply with a court discovery order, and tailored its arguments accordingly. In the end, therefore, the Court rests its denial of Defendant's request for

relief based on Plaintiff's written discovery responses on principles of waiver for failing to cite legal authority or develop the issue.

## Conclusion

FOR THE FOREGOING REASONS, Defendant's Motion For Sanctions **(Doc. 21)** is **DENIED.**

IT IS SO ORDERED this 9th day of September, 2025.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE