IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSHUA JOHNSON,

      *Plaintiff,*

v.                                 No. 2:23-cv-01063-SMD-KRS

PARKS-FLOYD INVESTMENTS,
LLC d/b/a VILLAGE LODGE

      *Defendant.*

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant Parks Floyd Investments, LLC d/b/a Village Lodge's ("Village Lodge") motion for summary judgment. Doc. 24 ("Def.'s SJ Mot."). Plaintiff Joshua Johnson ("Johnson") filed his response, and Defendant filed its reply. Doc. 33 ("Pl.'s Resp."); Doc. 38 ("Def.'s Reply"). The Court also considers the allegations set forth in Plaintiff's complaint and Defendant's answer. Doc. 1 ("Compl.").

### FACTUAL BACKGROUND

The case arises from an employment dispute between Plaintiff Johnson and Defendant Village Lodge. *See* Compl. Village Lodge is a single-site local hotel. Def.'s SJ Mot. at 2. Johnson began working for Village Lodge as a maintenance worker on August 7, 2021, at an initial rate of $15 per hour.[1] Compl. ¶ 15. Around November 7, 2022, Johnson's pay increased to $16 per hour, a rate he earned until his termination on or about October 11, 2023. *Id.*

As a maintenance worker, Johnson performed various tasks on Village Lodge's property. *Id.* ¶ 17. Johnson asserts that he lived on-site throughout the relevant period and always remained

---

[1] Defendant points out inconsistencies in Plaintiff's alleged start date, noting that Plaintiff's complaint lists August 7, 2021, while his response lists August 6, 2020. *See* Def.'s Reply at 2–3.

on call to handle discrete assignments, such as unloading trucks, opening guest rooms, and carrying luggage. *Id.* ¶ 20; Pl.'s Resp. at 9. Johnson claims that Village Lodge regularly required him to work over 40 hours per week, with his manager, Asia Miner, messaging him at all hours to assign tasks. Compl. ¶ 30.

To support this claim, Johnson provided screenshots of messages showing that Miner assigned him tasks at various hours. *See* Doc. 33-1 at 6–24. Johnson alleges that Village Lodge routinely failed to pay his overtime at the appropriate rate, instead treating his on-call hours as "off the clock." *Id.* ¶¶ 32, 35. According to Johnson, he worked an average of 80 or more hours per week from November 28, 2021 to approximately October 11, 2023. *Id.* ¶ 34.

Johnson raised concerns with Miner regarding the alleged discrepancy in his overtime pay. *Id.* ¶ 37. Johnson alleges that Miner ignored his objections and refused to remedy the pay practices. *Id.* ¶ 39.[2] On October 9, 2023, Johnson's counsel issued a demand letter on his behalf seeking payment for his unpaid overtime. *Id.* ¶ 42. Two days later, Village Lodge terminated Johnson. *Id.* ¶ 44. Johnson maintains that this termination has caused him severe financial hardship. *Id.* ¶ 47.

Village Lodge rejects this narrative, asserting that Johnson was an independent contractor rather than an employee, as he set his own schedules and did not work on a daily basis. Def.'s SJ Mot. at 4; Doc. 25 at 11. In support of this classification, Village Lodge points out that Johnson filed a Form 1099 when he first started. *See* Def.'s SJ Mot. at 6. Village Lodge further claims that Johnson was free to leave the premises and that no evidence suggests he was required to always be available. *Id.* Additionally, Village Lodge represents that it paid every invoice Johnson submitted to manager Asia Miner. *Id.* at 8. Village Lodge claims that under this arrangement,

---

[2] Plaintiff's paragraph numbers are inconsistent after paragraph 37 (e.g., paragraph 15 erroneously follows paragraph 37). The Court cites these paragraphs according to their correct sequence rather than their labels.

Johnson was compensated for hours claimed on specific tasks rather than on a daily or weekly basis.  Doc. 25 at 11.

Johnson has brought this action against Village Lodge alleging two counts, violation of 28 U.S.C. § 207 for failure to pay overtime compensation, and violation of 28 U.S.C. § 215(a)(3) for unlawful retaliation.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).  The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once this requirement is met, the non-movant can defeat summary judgment by showing that there is a genuine dispute of material facts.  *Id.*  The non-movant's response must "set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  The court then reviews the proffered evidence and, drawing all reasonable inferences in favor of the nonmoving party, determines whether the facts "establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

## DISCUSSION

A party's statement of material facts must "set out a concise statement of all of the material facts as to which the movant contends no genuine dispute exists."  D.N.M.LR-Civ. 56.1(b).  The statements must be numbered and "must refer to particularity to those portions of the record upon which the movant relies."  *Id.*  Defendant's motion falls short of these requirements.  Its statement

3

of facts is unnumbered and lacks any citation to the record, save for two facts that it supports. Where a purported fact omits a citation, it is facially deficient for purposes of summary judgment. *Mayfield v. Harvey Cnty. Sheriff's Dep't*, 732 F. App'x 685, 689 (10th Cir. 2018) (affirming denial of summary judgment where movant "cite[d] no evidence supporting their factual assertions").

## I.    Undisputed Material Facts

The Court begins with the parties' statements of undisputed material facts ("UMFs") and construes any disputed fact in the light most favorable to the non-moving party. *See Bausman*, 252 F.3d at 1115.

On or about November 7, 2022, Johnson alleged that Village Lodge increased his hourly rate to $16, a rate he received until his termination. Pl.'s Resp. at 3. While Village Lodge admits to this rate increase, it maintains that Johnson was never an employee. Def.'s Reply at 5.

Johnson raised concerns with Village Lodge, asserting that Village Lodge's pay practice violated the Fair Labor Standards Act ("FLSA") and that it had misclassified his employment status. Pl.'s Resp. at 4; Def.'s Reply at 6. On or around October 9, 2023, Johnson's counsel issued a demand letter to Village Lodge, alleging that its pay practices violated the law and seeking payment for all overtime hours Johnson worked. Pl.'s Resp. at 4; Def.'s Reply at 6.

Johnson alleges that Village Lodge ignored his objections and refused to remedy the disputed pay practice. Pl.'s Resp. at 4. Village Lodge admits receiving these objections but denies any violation of the FLSA. Def.'s Reply at 6.

Two days after Johnson sent the demand letter, Village Lodge terminated him. Pl.'s Resp. at 4. Village Lodge admits the timing of the termination, but it maintains that Johnson was never an employee and denies that the termination was retaliatory. Def.'s Reply at 7.

## II.    Disputed Facts

Apart from the facts mentioned above, Johnson and Village Lodge disagree over all other factual assertions.

Village Lodge alleges that Johnson did not have a fixed workweek as defined by the FLSA. Def.'s SJ Mot. at 2. Johnson disputes this claim, asserting that while he lacked a fixed schedule, Village Lodge required him to always be available and compensated him on the same schedule as other employees. Pl.'s Resp. at 2.

Village Lodge asserts that in September 2022, Johnson inquired about becoming an employee but changed his mind after being informed that he would lose control over his assignments, schedule, and hours. Def.'s SJ Mot. at 2. Johnson disputes this account, instead asserting that he was always an employee rather than an independent contractor. He further denies ever inquiring about a change in status in 2022. Pl.'s Resp at 2.

Village Lodge asserts that Johnson's work did not involve any direct contact with interstate commerce. Def.'s SJ Mot. at 2. Johnson disputes this claim, alleging that he regularly engaged in interstate commerce by serving hotel guests from other states and purchasing out-of-state goods for Village Lodge. Pl.'s Resp at 2.

Village Lodge alleges that it is a single-site local hotel with annual gross revenues of less than $500,000. Def.'s SJ Mot at 2. Johnson disputes this claim, arguing that this figure fails to account for cash transactions. Pl.'s Resp. at 2.

Johnson alleges that Asia Miner, manager and corporate representative for Village Lodge, offered him employment as a maintenance worker at an initial rate of $15 per hour. Pl.'s Resp. at 3. Johnson asserts that he accepted the offer and commenced work on August 6, 2020. *Id.* Village Lodge contests this account without further explanation. Def.'s Reply at 6.

Johnson asserts that he never attended technical or trade school, does not own a business entity related to the services he provided, and holds no license. Pl.'s Resp. at 3. While Village Lodge disputes this assertion by stating that Johnson claimed to be an experienced self-employed contractor, the Court finds the fact undisputed. *See* Def.'s Reply at 5. An individual's lack of formal technical training, business ownership, or professional licensing is not mutually exclusive to being an experienced contractor.

Johnson alleges that Village Lodge exercised complete control over his work and that he never used his own tools or supplies to complete his assignments. Pl.'s Resp. at 3. Village Lodge disputes this assertion. Def.'s Reply at 5.

Johnson alleges that Village Lodge is a hotel that engages in interstate commerce by serving out-of-state hotel guests and purchasing business supplies from out-of-state vendors. Pl.'s Resp. at 3. Johnson further asserts that he personally participated in interstate commerce by assisting out-of-state guests, unloading supply trucks from Texas, and purchasing tools from out-of-state vendors for his work at the hotel. *Id.* Village Lodge disputes each of these assertions. Def.'s Reply at 6.

Johnson alleges that Village Lodge required him to always be on-call and that he regularly worked more than 40 hours per week. Pl.'s Resp. at 4. Village Lodge disputes these assertions. Def.'s Reply at 6.

Johnson further alleges that he was required to submit time sheets rather than invoices to receive payment, a fact that Village Lodge also disputes. Pl.'s Resp. at 4; Def.'s Reply at 6.

Johnson asserts that from November 28, 2021, to approximately October 11, 2023, he averaged 80 hours of work per week. Pl.'s Resp. at 4. He further asserts that Village Lodge failed

6

to compensate him for all overtime hours and neglected to maintain a timekeeping system to track his hours or payrolls. *Id.* Village Lodge disputes each of these assertions. Def.'s Reply at 6.

Johnson submits handwritten records to support his claim of regularly working over 40 hours per week. *See* Doc. 33-1 at 25–59. Village Lodge provides no time sheets, pay stubs, or contracts to clarify Johnson's employment terms or the specific hours and days he worked. Instead, Village Lodge relies exclusively on Asia Miner's affidavit and portions of Johnson's deposition. *See* Doc. 25. Village Lodge also submits a settlement agreement from Johnson's previous employment at an unrelated hotel. *See id.* at 13–22. The Court declines to speculate whether Village Lodge offers this document to suggest a prior pattern of conduct and finds it irrelevant to the present motion.

**III.    Defendant Is Not Entitled to Summary Judgment on the Overtime Claim.**

    a.  Genuine Disputes of Material Fact Exist Regarding Whether Village Lodge Is a Covered Enterprise Under the FLSA.

Defendant Village Lodge argues that it is entitled to summary judgment on both counts of Plaintiff Johnson's complaint because it is not a covered enterprise as defined by the FLSA. Def.'s SJ Mot. at 3. The Court finds, however, that Village Lodge's coverage under the FLSA remains a genuine dispute of material fact; therefore, Village Lodge is not entitled to summary judgment on this issue.

Under 28 U.S.C. § 203(s)(1)(A), the FLSA only governs an employer if it: (1) has employees engaged in commerce; and (2) has an annual gross sales or volume of business of at least $500,000. Village Lodge contends that the FLSA does not apply to it because its annual gross receipts remained below $500,000 from 2021 through 2023, the years Johnson claimed to have worked for Village Lodge. Def.'s SJ Mot. at 3.

Village Lodge submitted tax documents for the relevant period to support its position. *See* Doc. 25 at 4–8. For 2020, Village Lodge reported gross receipts or sales of $252,815. *See id.* at 5. For 2021, Village Lodge reported $ 372,340.7 in gross payments from card and third-party network transactions. *See id.* at 6. For 2022, its gross payments from card and third-party network transactions totaled $423,975.59, and for 2023, that amount reached $487,480.49. *See id.* at 7–8. Johnson disputes that Village Lodge's annual gross revenue was less than $500,000, arguing that the tax records fail to account for cash sales. Pl.'s Resp. at 3.

The Court notes that from 2021 to 2023, Village Lodge provides only tax records reflecting card payments and third-party network transactions. *See* Doc. 25 at 6–8. Under 29 C.F.R. § 779.259, the "annual gross volume" for FLSA purposes includes the "the gross dollar volume (not limited to income) derived from all sales and business transactions." Because Village Lodge's 2021–2023 records only include card and third-party transactions, they fail to account for all business activity. While Village Lodge's manager Asia Miner stated in her affidavit that the hotel grossed less than $500,000 annually from 2017 to 2023 based on her review of available IRS filings (Form 1120-S and 1099-K), Village Lodge failed to provide supporting evidence accounting for its total gross income from 2021 through 2023. *See* Doc. 25 at 8. Specifically, Village Lodge offered no records to establish that it had no other sources of revenue, such as cash sales, beyond the reported card transactions.

Consequently, there is a genuine dispute of material facts regarding whether the FLSA governs Village Lodge and whether its annual gross volume of business exceeds $500,000. *But see Johnson v. Sun & Chang Corp.*, 572 F. Supp. 3d 543, 549 (N.D. Ind. 2021) (granting summary judgment in employer's favor where the employee raised only conclusory allegations regarding the employer's income without producing evidence). Because Village Lodge as the movant has

not demonstrated the absence of genuine dispute regarding its total gross income, the Court cannot rule that the FLSA does not apply to Village Lodge as a matter of law.

b. Genuine Disputes of Material Fact Exist Regarding Whether Johnson Is a Covered Individual Under the FLSA.

Even in the absence of enterprise coverage, an employee may still trigger the FLSA through individual coverage if the employee engages in: (1) interstate commerce or producing goods for commerce; or (2) activities that are closely related and directly essential to producing goods for commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a).

The Tenth Circuit has explained the standard for individual coverage under the FLSA as follows:

> For individual coverage, an employee must directly participate in the actual movement of persons or things in interstate commerce. To determine whether an employee is engaged in commerce we look at her activities, not the business of her employer. She must either work for a transportation or communication industry employer or regularly and recurrently use an instrument of interstate commerce, such as a telephone. Isolated or sporadic activities do not satisfy this requirement.

*Reagor v. Okmulgee Cnty. Fam. Res. Ctr.*, 501 F. App'x 805, 809 (10th Cir. 2012).

Village Lodge attempts to negate Johnson's individual coverage under the FLSA by alleging that he never worked directly in interstate commerce. Def.'s SJ Mot. at 8. Johnson counters that the FLSA governs him because he regularly participated in interstate commerce by serving hotel guests arriving from other states, loading and unloading trucks carrying out-of-state supplies, and purchasing goods from out-of-state vendors for Village Lodge. Pl.'s Resp. at 2, 3, 9. While the Court finds that Johnson's claim for individual coverage appears tenuous, a genuine dispute of material fact remains, and Village Lodge therefore cannot obtain summary judgment on this issue.

The link between Johnson's duties and interstate commerce is attenuated. The Tenth Circuit has established that merely handling goods that had traveled in interstate commerce or

9

receiving clients who previously lived in other states does not implicate interstate commerce. *Reagor*, 501 F. App'x at 810.  In *Reagor*, the Tenth Circuit held that an employee did not engage in interstate commerce despite handling interstate goods, admitting out-of-state clients, using a telephone for work, and securing out-of-state manufactured prescription drugs for her clients.  *See id.* at 809.

The Tenth Circuit held that "[e]ven if the goods had traveled in interstate commerce, [the employee] did not engage in commerce, because the FLSA 'does not include goods after their delivery into the actual physical possession of the ultimate consumer.'"  *Id.* at 810.  The Tenth Circuit reasoned that the employee's local handling of these goods "was too remote to qualify as engaging in commerce." *Id.*  Thus, the fact that Johnson assisted with loading and unloading trucks carrying out-of-state goods does not necessarily trigger individual coverage under the FLSA.  *See Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1152 (D.N.M. 2020) (holding that handling tools and supplies manufactured outside of New Mexico does not constitute engagement in interstate commerce once those items have been delivered to the ultimate consumer).

The Tenth Circuit further clarified that providing housing to clients who previously resided in other states does not trigger the FLSA because such contact is strictly "local."  *Reagor*, 501 F. App'x at 810.  In *Reagor*, the court noted a lack of evidence that out-of-state residents regularly or recurrently stayed at the hotel.  *Id.*  Accordingly, although Johnson interacted with and assisted clients from other states, his activities remained local; without evidence that he helped transport these individuals across state lines or that they stayed at Village Lodge on a recurring basis, his actions lack the necessary link to interstate commerce.

In *Sobrinio*, the Fifth Circuit held that a motel employee serving as a janitor, security guard, and driver lacked individual coverage under the FLSA because his duties did not implicate

10

interstate commerce.  *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007).

Applying the Supreme Court's "practical test," the court reasoned that for the FLSA to apply, an

employee's work must be "so directly and vitally related to the functioning of an instrumentality

or facility of interstate commerce as to be, in practical effect, a part of it." *Id.* at 829 (citing *Mitchell*

*v. H.B. Zachry Co.*, 362 U.S. 310, 324 (1960)).  Ultimately, the court characterized the employee's

tasks as "isolated local activity" falling outside the Act's scope.  *Id.*

One of the few remaining facts that could support individual coverage for Johnson is his

purchase of out-of-state supplies and equipment, such as shampoo, conditioner, towels, toilet

paper, and bed sheets for Village Lodge.  Pl.'s Resp. at 8.  However, this claim is subject to two

caveats.  First, while Johnson's response states that he purchased these supplies from out-of-state

vendors, his declaration only indicates that he helped unload them from a truck.  *See id.*; Doc. 33-

1, Pl.'s Decl. ¶ 16.  This distinction is critical because purchasing out-of-state goods may trigger

individual coverage under the FLSA, while merely unloading supplies is generally insufficient

under Tenth Circuit precedent.  Additionally, Johnson fails to specify how often he purchased these

supplies.  This omission is vital since isolated or sporadic activities do not satisfy the requirements

for individual coverage under the FLSA.  *See Reagor*, 501 F.App'x at 809.

Despite these deficiencies, the Court cannot rule out FLSA coverage at this stage,

particularly as Village Lodge's enterprise coverage remains disputed.

c.  Genuine Disputes of Material Fact Exist Regarding Whether Johnson Was an
   Employee or an Independent Contractor.

The parties disagree over whether Johnson was an employee or an independent contractor

for purposes of FLSA coverage.  Because 29 U.S.C. §§ 206 and 207 mandate minimum wage and

overtime compensation for "employees" only, this distinction determines Johnson's eligibility for

11

overtime pay. The Court concludes that Village Lodge has failed to demonstrate the absence of material factual disputes regarding Johnon's status.

Under 29 U.S.C § 203(e)(1), an employee is broadly defined as "any individual employed by an employer." To effectuate the broad remedial purposes of FLSA, courts have adopted an expansive interpretation of employment status. *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989).

When determining whether an individual is an employee under the FLSA or an independent contractor exempt from its coverage, courts are not bound by contractual terminology or common law definitions. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994). Instead, the "economic reality" of the relationship governs, and courts evaluate this status by applying a six-factor test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998); *see also Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018).

No one factor alone is dispositive; instead, courts evaluate the totality of circumstances to determine the nature of the relationship. *Baker*, 137 F.3d at 1441.

As the Department of Labor Fact Sheet 13 explains, the goal of the economic realities test is to determine "if the worker is economically dependent on the employer for work or is instead in business for themselves." *See* Wage & Hour Div., U.S. Dep't of Lab., Fact Sheet #13: Is a Worker an Employee or an Independent Contractor (2024), https://www.dol.gov/agencies/whd/fact-sheets/13-flsa-employment-relationship; *see also Bartels v. Birmingham*, 332 U.S. 126, 130 (1947); *Snell*, 875 F.2d at 804–05 (holding that the focal point is "whether the individual is

12

economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself").

Village Lodge contends that Johnson was an independent contractor because he maintained significant autonomy over his work. *See* Def.'s SJ Mot. at 2, 7. Specifically, Village Lodge alleges that Johnson lacked a fixed schedule, chose which tasks to accept, and determined his own hours. *Id.* at 2. According to Village Lodge, he was not required to work daily, was never "on call," and had no obligation to remain on-site or available between specific tasks. *Id.* at 7. Furthermore, Village Lodge alleges that Johnson's compensation was based on the hours he reported for particular projects rather than a standard daily rate. *Id.*

To support this classification, Village Lodge notes that Johnson completed Form 1099 upon his initial engagement. Def.'s SJ Mot. at 6–8. Moreover, Village Lodge asserts that Johnson inquired about becoming an employee for Village Lodge in September 2022 but changed his mind after learning that he would lose control over his work assignments as an employee. *Id.* at 8. Village Lodge does not provide any time sheets, pay stubs, or other information regarding the terms of Johnson's employment.

Johnson disputes nearly all these assertions. While he acknowledges the lack of a fixed schedule, he maintains that he was expected to be available at all times. Pl.'s Resp. at 2. Johnson further alleges that Village Lodge provided all necessary tools and supplies for his duties and allowed him to make such purchases with a company credit card. *Id.* at 7. According to Johnson, he lived on-site and remained available at all hours to assist staff and clients. *Id.* He also represents that Village Lodge's manager, Asia Miner, assigned his daily projects, leaving him with no discretion to select his own tasks. *Id.* Finally, Johnson states that he never attended technical school and performed no tasks requiring specialized, skill-based training. *Id.*

The affidavits from Johnson and Asia Miner directly contradict each other. At the summary judgment stage, the court's function "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Krueger v. Phillips*, 154 F.4th 1164, 1195 (10th Cir. 2025). Therefore, without weighing the credibility of the evidence, the Court finds that Johnson's employment status remains a disputed material fact.

d.  Genuine Disputes of Material Fact Preclude Summary Judgment on the Elements of Johnson's Overtime Claim.

Village Lodge argues that even if the FLSA applies, it is entitled to summary judgment on the overtime claim because Johnson failed to establish a fixed workweek. In support, Village Lodge cites 29 C.F.R. § 778.105, which defines a workweek as "a fixed and regularly recurring period of 168 hours." Def.'s SJ Mot. at 4. Village Lodge further points to Johnson's deposition admission that he did not have a fixed workweek, suggesting that this omission is fatal to the overtime claim. Doc. 25 at 25, Pl.'s Dep. 15: 6–10.

The Court disagrees with this argument for two reasons. First, although Johnson admitted during his deposition that he did not begin his workweek on a specific day, his testimony was unequivocal regarding his constant availability. He clarified that he "never had days off" during the two-year period in question and was required to remain available at all times. *See* Doc. 25 at 23–25. It is not dispositive that Village Lodge obtained an admission that Johnson "did not actually have a workweek" or "did not start [his] workweek on any particular day."

Second, even if Village Lodge argues that an employee without a fixed workweek cannot recover overtime, it must still demonstrate that Johnson is not entitled to pay under the company's own established workweek structure. Under 29 C.F.R. § 794.138(a), an employee's workweek is a "fixed and regularly recurring period of 168 hours–seven consecutive 24-hour periods," which may "begin at any day set by the *employer*." (emphasis added). The Department of Labor's *Handy*

14

*Reference Guide to the Fair Labor Standards Act* similarly notes that a workweek begins on the day and hour "*established by the employer*." (emphasis added).  Wage & Hours Div., U.S. Dep't of Lab., *Handy Reference Guide to the Fair Labor Standards Act* (2023), https://www.dol.gov/agencies/whd/compliance-assistance/handy-reference-guide-flsa.

Therefore, Village Lodge's reliance on Johnson's admission that he lacked a fixed workweek is insufficient for summary judgment, particularly when Johnson clearly meant that he was required to always be available.  Village Lodge fails to show that Johnson would be ineligible for overtime compensation under its own workweek structure, as it does not provide any timesheets or pay stubs.  As a result, the Court rejects the argument that Johnson's inability to prove a workweek entitles Village Lodge to summary judgment on the overtime claim.

Village Lodge further alleges that even if Johnson is a covered employee, he has failed to prove the following elements of an overtime claim: (1) he had an established workweek; (2) he worked more than 40 hours in his workweek; and (3) Village Lodge failed to pay overtime compensation.  Def.'s SJ Mot. at 4.  In support, manager Asia Miner stated in her affidavit that Village Lodge "paid every invoice (rather poorly presented time notes often on scraps or torn pieces of paper) Plaintiff ever presented to Manager Asia Miner." *Id.* at 8.

The Court cannot grant summary judgment based on Miner's assertion that Village Lodge paid all amounts owed, as the FLSA places the burden of maintaining accurate records on the employer.  *See* 29 C.F.R. § 516.2.  Under 29 C.F.R. § 516.2, "[e]very employer shall maintain and preserve payroll or other records containing" the specific day and time the workweek begins, the hours worked each day and week, total overtime premium pay, and total wages paid each period.

The FLSA also requires an employer to "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 448 (2016).

The Supreme Court held in *Tyson Foods* that "when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work," the employee need only present evidence sufficient to show the work performed "as a matter of just and reasonable inference." *Tyson Foods*, 577 U.S. at 456. The "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*; *see also Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 365 (6th Cir. 2019).

At this stage, the Court finds that Johnson has presented sufficient evidence to support a just and reasonable inference regarding his uncompensated work. The burden shifts to Village Lodge to provide evidence of the precise amount of work performed or to otherwise dispute the reasonableness of that inference.

Specifically, Johnson provides screenshots of messages between him and Asia Miner, showing that Miner directed him to perform tasks at various times throughout the day. *See* Doc. 33-1 at 6–24. Johnson also presents handwritten records and logs of his working hours. *See id.* at 25–59. While Johnson's records are admittedly cursory and occasionally difficult to read, they are sufficient to meet the just and reasonable inference threshold. For example, the Court's calculation of the hours Johnson worked during a one-week period indicates that his total time exceeded 40 hours. The following table reconstructs Johnsons' handwritten records for clarity:

16

| Sun | Mon | Tue | Wed | Thurs | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 4-22<br><br>10:30-6:00<br><br>8:00-12:00 | 4-23<br><br>6:00-12:00 |
| 4-24 | 4-25<br><br>12:00-5:00<br><br>8:30-12:00 | 4-26<br><br>11:00-3:00<br><br>5:00-1:00 | 4-27<br><br>6:00-1:00<br><br>3:00-10:00<br><br>11:00-4:00 | 4-28<br><br>11:00-6:00<br><br>8:00-3:00 | 4-29<br><br>8:30-1:00<br><br>3:00-1:00 | 4-30 |
| 5-1<br><br>10:00-6:00 | 5-2<br><br>7:00-11:00<br><br>1:00-4:00<br><br>6:00-3:00 | 5-3<br><br>3:00-1:00<br><br>3:00-7:00 | 5-4<br><br>8:00-12:00<br><br>2:00-12:30 |  |  |  |

*See* Doc. 33-1 at 27.

Although Village Lodge characterizes Johnson's claim of being on call for 30 consecutive months as "absurd," it fails to produce its own records to rebut this testimony. *See* Def.'s Reply at 7. The Court acknowledges Village Lodge's argument that it had no record-keeping obligation because it classified Johnson as an independent contractor. However, as previously discussed, because Village Lodge has not demonstrated the absence of material factual disputes regarding Johnson's status, it remains subject to the burden-shifting framework. Village Lodge cannot dispute the accuracy of Johnson's logs without producing its own records.

Because genuine disputes of material facts remain regarding Village Lodge's status as a covered enterprise and Johnson's status as a covered employee, and because an undefined workweek does not foreclose an overtime claim, the Court denies summary judgment on these issues. To obtain summary judgment, Village Lodge must alternatively show that Johnson was properly compensated for all hours worked, and Village Lodge failed to carry this burden. A mere

assertion by Miner that Village Lodge paid all invoices is insufficient.  The Court therefore denies

Village Lodge's motion for summary judgment on the overtime claim.

**IV.     Plaintiff Establishes a Prima Facie Case of Retaliation, Which Defendant Fails to Rebut.**

Village Lodge also seeks to dismiss Johnson's retaliation claim, arguing that he was not an

employee and therefore lacks FLSA's protection.  *See* Def.'s SJ Mot. at 2.  However, the Court has

determined that Village Lodge failed to establish Johnson's classification as an independent

contractor as a matter of law.  Based on the current record, summary judgment cannot be granted

on this basis.

The Court finds that Johnson has established a prima facie case of retaliation.  Village

Lodge has failed to rebut this showing with a legitimate, non-retaliatory reason for the adverse

employment action.  *See Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004).

Accordingly, the Court denies Village Lodge's motion for summary judgment on the retaliation

claim.

FLSA retaliation claims are analyzed under the three-pronged *McDonnell Douglas* burden-

shifting framework.  *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997).  To establish

a prima facie case of retaliation, an employee must demonstrate: (1) he engaged in protected

activity under FLSA; (2) he suffered an adverse employment action contemporaneous with or

subsequent to the protected activity; and (3) a causal connection between the protected activity

and the adverse employment action.  *Conner v. Schnuck Mkt., Inc.*, 121 F.3d 1390, 1394 (10th Cir.

1997).

The Tenth Circuit has clearly established that an employee's request for overtime wages is

a protected activity in the form of an unofficial assertion of FLSA rights.  *Id.*; *see also Pacheco*,

365 F.3d at 1206.  A causal connection can be demonstrated circumstantially through evidence that

18

justifies an inference of retaliatory motive, such as a "very close" temporal proximity between the protected activity and adverse employment action. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999); *Pacheco*, 365 F.3d at 1206.

For the instant motion, Johnson alleges, and Village Lodge does not dispute, that Johnson was terminated just two days after objecting to Village Lodge's pay practice. *See* Pl.'s Resp. at 4; Def.'s Reply at 6–7. This close temporal proximity supports the causation element of his claim. Additionally, Johnson satisfies the remaining prima facie requirements because he engaged in the protected FLSA activity by requesting overtime pay and subsequently suffered an adverse employment action through his termination.

Village Lodge fails to provide a legitimate, non-retaliatory reason for the termination, relying instead on its argument that Johnson was never an employee and the conclusory statement that the termination was not retaliatory. Because Village Lodge has not demonstrated that Johnson's status as an independent contractor is undisputed, nor offered a valid justification for his termination, the Court denies the motion for summary judgment on the retaliation claim.

**CONCLUSION**

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for summary judgment is **DENIED**.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**